In the Matter of the ESTATE OF
Howard D. BRADY, Deceased.

Appeal of Ralph J. BROWN, Thomas B.
Brown, and Daniel P. Ernst.

In the Matter of the CONSERVATOR-
SHIP OF Howard D. BRADY, Deceased.

Appeal of Ralph J. BROWN, Thomas B.
Brown, and Daniel P. Ernst.

In the Matter of the ESTATE OF
Howard D. BRADY, Deceased.

MONTICELLO STATE BANK, Executor
of the Estate of Howard D. Brady, De-
ceased, Monticello State Bank, Sim-
mons, Perrine, Albright and Ellwood,
and Robert R. Beckmann, Appellants,

v.

Ralph J. BROWN, Thomas B. Brown,
and Daniel P. Ernst,
Appellees-Cross-Appellants.

Nos. 64670, 65213.

Supreme Court of Iowa.

July 15, 1981.

Michael A. Stapleton of Klauer, Stapleton & Ernst, Dubuque, for appellants Ralph J. Brown, Thomas B. Brown, and Daniel P. Ernst.

J. E. Heiserman of Remley, Heiserman & Willems, Anamosa, and Robert C. Tilden and Iris E. Muchmore of Simmons, Perrine, Albright, & Ellwood, Cedar Rapids, for appellants Monticello State Bank and lawyers.

Considered by LeGRAND, P. J., and UH-LENHOPP, HARRIS, McCORMICK, and LARSON, JJ.

McCORMICK, Justice.

These consolidated appeals involve questions arising from five contested proceedings relating to administration of the conservatorship and estate of decedent Howard D. Brady. In each proceeding the Monticello State Bank was pitted against Ralph J. Brown and Thomas B. Brown, second cousins of the decedent who were the residuary beneficiaries of his estate. Daniel P. Ernst, who is now coexecutor of the Brady estate with the Browns, joined the Browns in objecting to the bank's conservatorship and estate final reports. Nine orders entered by the trial court are challenged in these appeals. We affirm in part and reverse in part.

Decedent was a bachelor who owned a 350–acre farm in Jones County. He lived on the farm with his mother. In late 1974 he learned he was terminally ill with cancer. Upon his voluntary application, the bank was appointed his conservator.

On December 30, 1974, decedent executed a will, making two changes in specific bequests provided in a September 6, 1974, will. His health worsened and he moved to Wisconsin where he lived in a rented trailer on the Browns' farm. Subsequently he entered a hospital in Darlington, Wisconsin. On March 5, 1975, he executed a new will in which he made additional changes in specific bequests.

The Browns were the residuary beneficiaries in all three wills. The bank was nominated as coexecutor with Thomas B. Brown in the first two wills, but the Browns were nominated as coexecutors in the third. Decedent died in the Wisconsin hospital on March 20, 1975. The Browns initiated probate of the March 5 will in LaFayette County, Wisconsin. Despite notification by the Browns' attorney of the existence of the March 5 will, the bank filed the December 30, 1974, will for probate in Jones County and was appointed coexecutor with Thomas B. Brown.

Subsequently, after a contested hearing, the bank obtained an order from the Jones district court allowing it to intervene in the Wisconsin estate proceeding. In its intervention, the bank objected to probate of the March 5 will. It alleged decedent was a resident of Iowa at his death, the will was not duly executed, and the decedent was unduly influenced and lacked testamentary capacity. Because the residency issue involved jurisdiction, the Wisconsin court separated that issue for trial first. After trial of that issue in July 1975, the court held decedent was a resident of Wisconsin at his death.

The bank then dismissed its petition of intervention in the Wisconsin proceeding. Subsequently it obtained an ex parte order authorizing commencement of a declaratory judgment action in Jones County, raising again the residency, undue influence and testamentary incapacity issues. The bank's declaratory judgment petition was filed in December 1975. The action was tried in October 1977. Judgment was entered on a jury verdict for the bank on the residency issue but upholding the March 5 will. That will was admitted to probate in Iowa, and the Browns and Ernst were appointed coexecutors.

Subsequently the bank filed its final reports in the conservatorship and estate. The Browns and Ernst filed objections. The Browns later brought a tort action against the bank in its individual capacity, seeking damages for the bank's alleged malfeasance in the administration of the conservatorship and estate.

On motion of the bank, two counts in the malfeasance action were transferred to probate for trial with the objections to the final reports. Over the Browns' objection, the court ordered that the probate issues be litigated first. The Browns dismissed one of the malfeasance counts, leaving only one for trial in probate. All the probate issues were then tried, and a number of separate orders were entered. The present appeals followed.

The questions are whether the court erred (1) in ordering trial of the probate issues first, (2) in allowing compensation from the estate for the bank and its attorney for the Wisconsin litigation, (3) in allowing compensation from the estate for the bank and its attorney for the declaratory judgment action, (4) in approving the conservatorship final report and allowing conservatorship fees, (5) in approving the estate final report and allowing estate fees, (6) in denying attorney fees from the estate for more than one attorney, (7) in refusing to allow any compensation from the estate to the bank and its attorney for defending the probate portion of the malfeasance action, (8) in denying a claim against the estate for expert witness fees, and (9) in allowing fees to the bank's attorney for extraordinary services in defending the final reports. We must also rule on the bank's application for appellate attorney fees in the appeal taken by the Browns from the conservatorship and estate orders.

 I. *The order of trial.* The Browns contend the court erred in refusing to defer trial of the probate issues until after trial at law of the remainder of their malfeasance action. They argue that the

doctrine of issue preclusion will nullify their right to jury trial in the malfeasance case.

Trial of two counts of the malfeasance action was deferred. Only one of those counts involved issues tried in probate; issues involved in the other count, concerning alleged improper sale of cattle, were expressly excluded from the probate trial. The trial court recognized this in overruling a motion for summary judgment on that count.

The elements of issue preclusion are delineated in *Hunter v. City*, 300 N.W.2d 121, 123 (Iowa 1980). For the doctrine to be applicable, the issues must be the same. Assuming the other elements are present in this case, the doctrine should affect only one count of the malfeasance action. The Browns' right to jury trial should not otherwise be impaired.

In arguing that the law issues should have been tried first, the Browns rely on *Morningstar v. Myers*, 255 N.W.2d 159, 161 (Iowa 1977), where the general rule concerning order of trial of split issues was stated:

> This is a matter which lies within the trial court's discretion and ordinarily is to be decided on considerations of efficiency, conservation of judicial time and avoidance of multiple trials. However, right to jury trial is to be preserved and should not be impaired except for compelling reasons....
>
> Although it has been said that equitable issues should be tried first, this is not an inflexible rule. We have several times expressed the view that the case which is most likely to dispose of the whole controversy should be tried first in order to avoid an unnecessary second trial.

The preference for jury trial is less influential when separate cases rather than split issues are involved.

In addition, the conservatorship had been open since 1974 and the estate since 1975. The malfeasance action was not filed until 1978. The conservatorship and estate disputes involved more issues than the law action, and most were unrelated to the issues in that case. Although the possible effect on the Browns' right to jury trial was an important consideration in the decision concerning order of trial, it was not determinative. The age of the conservatorship and estate and the number and nature of issues were also relevant. Under this record, the trial court did not abuse its discretion in ordering trial of the probate issues to precede trial of the remaining counts of the law action.

■ II. *Compensation for the Wisconsin litigation.* The Browns assert the court erred in awarding compensation to the bank and its attorney for the Wisconsin litigation. The court based its finding of compensability on the allegedly preclusive effect of the 1975 Jones district court order authorizing the bank to intervene in the Wisconsin probate proceeding. That order was entered by another judge. The trial court reasoned that a finding of good faith and just cause was implicit in it. Because the order was entered after an adversary hearing and was not appealed, the court concluded the order was a binding adjudication of the issues.

The relevant statute is section 633.315, The Code, which provides:

> Allowance for defending will. When any person is designated as executor in a will, or has been appointed as executor, and defends or prosecutes any proceedings in good faith and with just cause, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney fees in such proceedings.

Existence of good faith and just cause is ordinarily a question of fact. *In re Estate of Cory*, 184 N.W.2d 693, 698 (Iowa 1971). Governing principles are explained at 184 N.W.2d 697–99.

We do not believe these issues were adjudicated in the 1975 order. That order expressly provided: "Any and all issues as to the allowance or allocation of litigation fees and expenses are deferred by the Court for later consideration consistent with the matters adjudicated in this Order...." It is

not always possible to decide the issue of just cause prior to the litigation. When that is true, a court is right in refusing to decide in advance that compensation for the executor's participation will be paid from the estate. *In re Estate of Law*, 253 Iowa 599, 604–05, 113 N.W.2d 233, 236 (1962). We think the court reserved the issues of good faith and just cause in the 1975 order. The trial court erred in holding the order adjudicated those issues.

Nevertheless, we find in our de novo review of the record that the bank carried its burden to demonstrate good faith and just cause for its intervention. The fact the bank sought court authorization is evidence of its good faith. The bank's legitimate concern about the genuineness of the March 5 will and the rights of unrepresented legatees under the December will is evidence of just cause.

Bank trust officer Richard Moore testified the bank's suspicion that the March 5 will was not genuine was based largely on the fact the March 5 will was executed the day after an incident at the bank in which the Browns had unsuccessfully sought to dissuade Moore from selling decedent's cattle. Moore testified:

> The will was drafted and executed on the day after Tom Brown and Ralph Brown had attempted to stop the sale of the cattle and had said that Howard Brady was high on drugs but they could take him off if they had to, and if the bank went ahead with this sale it would be the highest priced sale the bank had ever had. So the timing was one of the most crucial points . . . that made us feel very uneasy.

Besides the difference in executors, the March 5 will omitted six specific bequests totaling $10,000. It added a specific bequest of $20,000 to decedent's nephew Paul Brady and reduced a bequest in trust for Paul Brady's children from $12,500 to $5000. The effect was to reduce slightly the residuary share of the Browns.

In alleging its good faith and just cause for the Wisconsin litigation, the bank asserts it was representing the interests of omitted legatees and the Brady children whose legacy had been reduced. Two of the legatees separately intervened in the action.

This situation is distinguishable from the circumstances in *Cory, Law*, and *In re Estate of Swanson*, 240 Iowa 1011, 38 N.W.2d 652 (1949), where all interests were separately represented. In those cases the nominated executors could only have been serving their personal interests and not a substantial estate interest. Although the fact all interests were not otherwise represented in the present case does not alone demonstrate good faith and just cause, it is a factor to be considered. The bank's position would be stronger if it had investigated the merits of its suspicions before rushing into litigation. Our decision would be more difficult if the litigation had proceeded further than trial of the jurisdictional question. The issue is close, but we conclude the trial court did not err in awarding compensation from the estate to the bank and its attorney for the limited Wisconsin litigation.

III. *The declaratory judgment action.* We cannot reach the same conclusion regarding the Iowa declaratory judgment action. Having lost its case on the jurisdictional question, the bank withdrew its Wisconsin challenge to the March 5 will and started the litigation anew in Iowa. At this point, we believe the litigation no longer served any substantial estate interest.

Because the residency issue which was tried in Wisconsin depended on the effect to be given decedent's declaration of Wisconsin domicile in the March 5 will, the circumstances surrounding execution of that will were explored in that litigation. The Browns introduced strong evidence tending to negate the claims of undue influence and testamentary incapacity. Witnesses included decedent's treating physician, the attorney who drew the will, and an acquaintance of decedent who, with the physician and attorney, witnessed the will.

The physician testified that decedent remained alert and oriented during his last illness when not medicated. To assure his

lucidity on March 5, decedent was given no medication after 12:20 p. m. When the doctor examined decedent alone at approximately 4:30 p. m. before the will was executed, he said decedent was alert, oriented and knew what he was doing. When the others arrived, decedent discussed changes in the will, particularly his desire to add the provision for his nephew Paul from whom he previously had been estranged. The doctor heard the attorney explain the will and heard decedent give appropriate answers to the attorney's questions.

The attorney testified he practiced law in Wisconsin for 34 years. He said he had probated more than 850 estates and had drafted more than 500 wills which had not yet been probated. He read the entire will to decedent and then went over it to point out the differences between that will and the previous will. Decedent corrected the attorney about a provision the attorney mistakenly thought was different. Based on his observations and the discussion, the attorney testified he believed decedent was very alert and competent. Among other things, the attorney said decedent told him he was displeased with the bank because it had rejected the request he conveyed through the Browns that his cattle not be sold.

The acquaintance who also witnessed the will confirmed the testimony of the physician and attorney concerning the circumstances of the will's execution.

Considering the substantial estate expenses incurred in the Wisconsin litigation, the affected unrepresented specific legatees relatively small stake in the estate, and the lack of evidentiary support for the bank's remaining suspicions concerning the validity of the March 5 will, we do not believe the bank served any substantial estate interest in bringing the Iowa declaratory judgment action. We find insufficient evidence of just cause for that litigation apart from the bank's personal interest.

Therefore we hold that the trial court erred in awarding compensation from the estate to the bank and its attorney for services in the declaratory judgment action.

The court awarded $7500 for attorney fees and $223.66 for the attorney's expenses in that litigation. We reverse that award.

The court did not segregate the award to the bank for prosecuting the declaratory judgment action from the award for the bank's other services. The court awarded the bank $3939 as a fee and $1868.56 for expenses for all of its services. We find that the bank should not receive more than $2000 for its services and $500 for expenses. We reverse the award to the extent it exceeds those amounts.

IV. *Objections to the conservatorship final report.* The Browns made five objections to the bank's final conservatorship report. After hearing, the trial court found the bank met its burden to sustain its report and the Browns did not prove the affirmative allegations of their objections. *See In re Estate of Sterling,* 249 Iowa 1260, 1269, 92 N.W.2d 138, 144 (1958). In our de novo review, we reach the same conclusion as the trial court. A discussion of the evidence would have no precedential value.

V. *Objections to the estate final report.* The trial court also found the bank met its burden to sustain its final report in the estate and found the Browns did not prove their allegations in objecting to it. We agree with the trial court.

VI. *Additional conservatorship and estate attorney fees.* On February 16, 1979, the bank employed the Cedar Rapids law firm of Simmons, Perrine, Albright & Ellwood to assist its attorney J. E. Heiserman of Anamosa in defending its final reports in the conservatorship and estate. When that litigation concluded, the Simmons firm applied to the court for compensation from the estate for its services. The court denied the application on the ground that the services of more than one attorney were not reasonably necessary to protect the interests of the estate.

Principles governing compensation for probate services are discussed in *In re Estate of Simon,* 288 N.W.2d 549, 551–52 (Iowa 1980), and *In re Estate of Myers,* 269 N.W.2d 127, 129 (Iowa 1978). The burden is

on the applicant for fees to show the services were reasonably necessary and the charges are reasonable in amount. Unless induced by legal error, the trial court's decision will be reversed only for abuse of discretion.

The law firm contends the court abused its discretion because of the complexity of the litigation and the possibility of attorney Heiserman's disqualification.

The litigation was substantial, but Mr. Heiserman had carried the burden alone for almost four years before additional counsel was hired. No question is raised about his ability to defend the final reports he prepared for the bank. The trial court had discretion to find the complexity of the litigation did not necessitate hiring additional counsel. Although the bank may have wished additional counsel because of the malfeasance action, that would not establish a basis for extra counsel at the expense of the estate in the conservatorship and estate.

Nor did the possibility of withdrawal of attorney Heiserman necessarily require employment of additional counsel. If circumstances required his withdrawal pursuant to DR 5–102(A), the trial court could find the bank should have known of that necessity in time to employ new counsel. The court acted within its discretion in finding the employment was not reasonably necessary for protection of the estate's interests.

VII. *Compensation from the estate for defending the malfeasance action.* The trial court refused to allow fees from the estate to either attorney Heiserman or the Simmons firm for defending the Browns' malfeasance action against the bank. Recognizing that statutory authority is necessary for any fee award, the attorneys cite section 633.199 as authority for fees in this situation. It provides in part that necessary and extraordinary services to an estate include "litigated matters." Their problem with this statute, however, is that it authorizes fees only for services which protect or benefit the estate. *See* Iowa R. Probate P. 2(c); *In re Myers Estate*, 238 Iowa 1105, 1112, 29 N.W.2d 426, 430 (1947). Their reliance on *In re Estate of Swanson, supra*, is misplaced. Statutory authority existed for the fees which were approved in that case. 240 Iowa at 1016, 38 N.W.2d at 655 ("The reasonable expense of such an attorney was a legitimate item and as such included in the costs which the estate must bear for the proponents' offering of the will and reasonable efforts to sustain it and secure its probation.").

The malfeasance action was brought against the bank in its individual capacity. Its defense of that action was for its personal protection, not for protection of the estate. *See* 31 Am.Jur.2d *Executors and Administrators* § 260 at 136 (1967). The trial court did not err in refusing to order compensation from the estate for these services.

VIII. *Expert witness fees.* Attorney Robert R. Beckmann testified as an expert witness on attorney fees in support of the fee applications of attorney Heiserman in the conservatorship and estate. He applied to the court for expert witness fees. The court denied the application, and he appeals.

Again, the issue is not the value of the services but whether the estate should be charged for them. While the services helped attorney Heiserman, the trial court acted within its discretion in finding they did not benefit the estate. The trial court did not err in refusing to order the estate to pay for them. No issue is presented in this appeal concerning whether the witness fee could be taxed against the Browns as costs. *See* § 622.72.

IX. *Attorney fees for defending the final reports.* The trial court allowed attorney Heiserman $1800 in fees plus $11.85 for expenses for extraordinary services in defending the final reports. The Browns contend the court erred because these services were not extraordinary within the meaning of section 633.199. Extraordinary services are those which "in character and amount [are] beyond those usually required . . . ." *In re Estate of Seablom,*

231 Iowa 608, 613, 1 N.W.2d 701, 703 (1942). We do not believe the trial court abused its discretion in finding Mr. Heiserman's litigation services were compensable as extraordinary services under this standard.

X. *Appellate attorney fees.* The Simmons law firm has applied for compensation from the estate for its appellate services in representing the bank. Attorney Heiserman has not applied for fees.

The firm seeks compensation for all appellate services and expenses. In accordance with governing principles previously discussed, we find only the services relating to the conservatorship and estate final reports are compensable. We allow $2000 from the estate toward the bank's attorney fees and expenses for those appellate services.

Costs are taxed one-half to the Browns and one-half to the bank.

AFFIRMED IN PART AND REVERSED IN PART.