# IN THE SUPREME COURT OF IOWA

No. 09–1914

Filed April 13, 2012

**IN THE MATTER OF THE ESTATE OF
LOREN S. BOCKWOLDT,** Deceased.

**DALE RICHARD WILLOWS,** Conservator
for Brandie Renee Bockwoldt, Minor Child
of the Decedent,

     Appellant,

vs.

**THE ESTATE OF LOREN S. BOCKWOLDT,**

     Appellee.

___

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Muscatine County, James E. Kelley, Judge.

The conservator of a minor beneficiary of the estate of Loren S. Bockwoldt appeals the award of extraordinary fees and expenses to the attorney for the estate. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

Timothy L. Baumann, William B. Norton, and Christopher L. Surls of Norton, Baumann & Surls, PLLC, Lowden, for appellant.

Daniel P. Kresowik of Stanley, Lande & Hunter, P.C., Davenport, for appellee.

**ZAGER, Justice.**

This case comes before us on further review from the court of appeals. As part of an order approving the final report of the executor of the estate of Loren S. Bockwoldt, the district court approved extraordinary attorney fees of $15,845.50 for Pete Wessels and $17,957.91 in attorney fees for the law firm of Stanley, Lande and Hunter (SLH), attorneys for the estate. The district court also approved expenses of $631.79. The district court found that these attorney fees and expenses were for necessary and extraordinary services to the estate pursuant to Iowa Code section 633.199 (2005). Dale Richard Willows, the conservator for the beneficiary of Loren's estate, objected to the application. After a hearing and ruling by the district court, Willows appealed. The court of appeals reversed the district court's ruling, holding "attorney fees may not be awarded for litigating an application for attorney fees under chapter 633." We granted further review. Upon our further review, we now vacate the decision of the court of appeals and affirm the order of the district court in part and reverse in part. We hold extraordinary attorney fees may be awarded for defending a fee application in district court and on appeal. However, the case must be remanded for a hearing to determine the amount of fees to be awarded to SLH.

## I. Factual Background and Prior Proceedings.

The present case requires us to resolve a dispute over a request for fees for extraordinary services in connection with the estate of Loren S. Bockwoldt. The extraordinary services at issue in this appeal were provided to the estate by Wessels and SLH between February 1, 2007, and June 8, 2009. This application was filed along with the final report and will be referred to as the 2009 application. The extraordinary

services contained in the 2009 application were primarily for the defense of an application for fees for extraordinary services that Wessels provided to the estate between March 23, 2005, and January 31, 2007. This first application will be referred to as the 2007 application. Wessels and Eric Knoernschild of SLH defended the 2007 application before the district court, which granted the 2007 application. After Willows appealed, Wessels and SLH then defended the 2007 application on appeal. After remand by the court of appeals, Wessels filed a modified version of the 2007 application. After the district court's decision on remand from the court of appeals, Willows again appealed the award of extraordinary attorney fees. Wessels and SLH again defended the modified 2007 application before the court of appeals. These are the extraordinary services for which Wessels and SLH now seek compensation in the 2009 application.

**A. The Background of the 2007 Application.** Loren and Tammy Bockwoldt, husband and wife, died in an automobile accident in Arizona on March 12, 2005. Loren had two children: an adult son, Brock, and a minor child, Brandie. Brandie was Tammy's only child. Brandie was a beneficiary of Loren and Tammy's estates, while Brock was only a beneficiary of Loren's estate. Tammy's brother, Willows, was appointed Brandie's conservator. Neal Bockwoldt, Loren's brother, was appointed as coexecutor of both Loren and Tammy's estates, along with Willows and Brock. Wessels was designated as the attorney for both estates, but later withdrew from representation of Tammy's estate due to a conflict of interest.

On February 16, 2007, the district court issued a ruling on several motions relating to Loren and Tammy's estates, including the 2007 application. The court awarded Wessels $67,045 in attorney fees from

Loren's estate and $5888.50 in attorney fees from Tammy's estate. On Wessels' motion, the court also removed Brock and Willows as coexecutors of both estates, citing conflicts of interest.[1] The court appointed Central State Bank as the executor of Loren's estate and First National Bank of Muscatine as the executor of Tammy's estate. There were significant assets in Brandie's conservatorship, so the court required Willows to post a bond prior to removing any money from the conservatorship. A wrongful death action was pending in Arizona at the time, so the district court refused to close the estates. However, since the ultimate outcome of the litigation was unclear, the district court ordered that "for the time being" half of the recovery should be placed in Tammy's estate and half should be placed in Loren's estate, noting that the order might be amended in the future. Willows appealed each of these rulings, including the award of fees requested in the 2007 application. The estates responded to the appeals.

On appeal, the court of appeals affirmed the district court's holding on all issues except the fee award. The court of appeals determined that the district court awarded fees without properly following code sections 633.197–.199. The court of appeals noted that as part of the 2007 application, Wessels had supplied a detailed, fifty-page statement itemizing exactly what services he had provided for the estate, as well as identifying seven "extraordinary issues" that had arisen during the management of the estate. These extraordinary issues included litigation as to Brandie's guardianship, ownership of farmland interests and farm-related business interests, income tax issues, obtaining information on fifteen different insurance policies between the two estates, and the

---

[1]Neal Bockwoldt subsequently withdrew as a coexecutor of both estates.

division of assets between the two estates.[2] However, at the hearing, the district court did not require Wessels to go forward to prove his fees, nor did the district court make specific findings as to which of these services were ordinary and which were extraordinary. As a result, the court of appeals remanded the 2007 application to the "district court for a hearing requiring the applicant to meet his burden and for specific findings regarding the reasonableness of ordinary fees and extraordinary fees granted."

On January 30, 2008, in response to the court of appeals ruling, Wessels filed another application for ordinary and extraordinary fees (the modified 2007 application). Like the initial 2007 application, the modified 2007 application sought fees for services provided from March 23, 2005, to February 1, 2007. It included the list of seven matters that were extraordinary and an itemized list of services provided.[3] Willows again objected. A hearing on the modified 2007 application commenced on February 25, 2008. Counsel for Wessels argued it would be "very difficult" to break out the "real estate, litigation, and taxation issues" involved in Loren's estate. The district court agreed and refused to require Wessels to break out or itemize his bill. However, the hearing was continued to allow Wessels "an opportunity to amend his proofs".

According to the itemized billing statement Wessels offered in support of the modified 2007 application, he had performed services for

---

[2]In later pleadings it is acknowledged that this case involves the conservatorship of Brandie.

[3]The remanded 2007 application initially sought fees for defending the district court's original ruling, and reimbursement for litigation expenses in the form of fees Wessels paid to SLH in connection with defending that ruling. However, prior to a hearing on the fee request, Wessels withdrew these portions of the remanded application leaving the fees earned from March 23, 2005, to February 1, 2007 as the sole subject of the application filed on January 30, 2008.

Loren's estate which totaled $76,375.50 in fees. This number was based on the number of hours Wessels worked on the estate multiplied by his hourly rate and included the hourly rate of Wessels' legal assistant. The modified 2007 application noted that, under section 633.197, the statutory cap on ordinary fees for Loren's estate was $20,432.89. The modified 2007 application requested the court award extraordinary fees of $55,942.61, the difference between the amount Wessels billed to the estate and the maximum amount allowed as ordinary fees under section 633.197.

At the resumed hearing on April 24, 2008, Willows admitted Wessels actually performed all the services listed in the itemized bill. Willows conceded Wessels was entitled to $20,432.89 in ordinary fees, $640.50 in necessary and extraordinary expenses, and $18,413 in fees for necessary and extraordinary services. Willows, however, disagreed that the remaining $37,529.61 in fees were for actual, necessary, and extraordinary services to Loren's estate. The district court disagreed with Willows, stating,

> It seems to this Court Willows has a larger obligation after Wessels specifically and extensively explained the unusual issues with which he had to come to grips . . . than to allege only in general terms without reference to specific services, some of the services Wessels provided were only "ordinary." He did not do so.

The district court then awarded Wessels all $76,375.50 in fees for ordinary and extraordinary services, and Willows appealed.

In its April 8, 2009 ruling, the court of appeals modified the district court's award. The court of appeals found the district court had once again improperly shifted the burden of proof under section 633.199 to Willows instead of placing it on the party requesting the fees. The court of appeals "disagree[d] with the district court that Wessels 'specifically

and extensively explained the unusual issues with which he had to come to grips.'" The court also took issue with how the amount of extraordinary fees was calculated, stating,

> Wessels's interpretation of the relevant code sections was that so long as he provided some extraordinary services, all his fees above the section 633.197 cap became presumptively compensable under section 633.199. This is not how the code sections operate.
>
> Section 633.198 authorizes payment of reasonable attorney fees "as full compensation for all ordinary services." The fee schedule provided in section 633.197 provides the maximum any attorney can collect on fees for ordinary services, regardless of the amount of time spent to perform such services. However, if an attorney performs "actual necessary and extraordinary" services, compensation will be provided under section 633.199. Section 633.199 does not automatically allow payment of any fees requested by the attorney that exceed the cap set by section 633.197. Rather, section 633.199 provides for the payment of extraordinary fees, fees for non-ordinary services including but not limited to "services in connection with real estate, tax matters, and litigated matters."

The court of appeals concluded that the district court did not make a finding that the services provided were "extraordinary" and that the district court did not "have an adequate basis to determine whether Wessels' claimed extraordinary fees were 'just and reasonable.'" The court of appeals modified the ruling, awarding $20,432.89 in ordinary fees, $640.50 for expenses that Willows conceded were necessary and extraordinary, and $18,413 in fees for services that Willows had conceded were extraordinary. An application for further review was denied by this court on June 5, 2009.

**B. The 2009 Application: Wessels and SLH's Extraordinary Fees for Defending the 2007 Application on Appeal and Remand.** On August 24, 2009, Central State Bank filed its final report, which included an application for extraordinary fees (the 2009 application). While the

2007 application was for services provided from March 23, 2005, to February 1, 2007, the 2009 application was for services provided from February 1, 2007, to June 8, 2009. The 2009 application included an itemized list of services Wessels provided to the estate, and indicated, line by line, which services Wessels asserted were extraordinary, as opposed to ordinary services, and only requested compensation for extraordinary services. It also included a "Statement of Extraordinary Fees" which detailed the necessity of the extraordinary services, the responsibilities assumed, and the importance of the services to the estate. Wessels' fees for the extraordinary services contained in the 2009 application totaled $15,845.50. The 2009 application also listed several "Outside Professional Fees" for SLH, totaling $17,952.91. The 2009 application described these fees as "extraordinary fees in regard solely to representation relative to litigation and appeal matters."

Willows resisted the 2009 application. He noted "nearly all" the services listed in the 2009 application were connected with the defense of the 2007 application, both on appeal and on remand. He also claimed SLH functioned as Wessels' personal attorney, and not the attorney for the estate, and that the request for fees for extraordinary services provided by SLH was not supported by adequate documentation.

After a hearing, the district court found that the itemizations accompanying the 2009 application "show reasonable, ordinary, and required services that were not ordinary services, and were required by the appeal filed by [Willows]. Those extraordinary fees total $15,845.50." The district court also found "the extraordinary fees of Pete Wessels of $15,845.50 and the attorney's fees for [SLH] of $17,957.91 are reasonable, appropriate and required to protect the executors of the estate and the estate . . . ." The court rejected Willows' argument that an

executor and the executor's attorneys cannot receive extraordinary fees for defending an appeal. Willows appealed, and we transferred the case to the court of appeals, which found that "attorney fees may not be awarded for litigating an application for attorney fees under chapter 633." Accordingly, the court of appeals reversed the award "in its entirety." The estate applied for further review, which we granted.

## II. Standard of Review.

This dispute requires us to review the district court's decision to award Wessels and SLH extraordinary fees in connection with Loren's estate. Contests involving the costs of administration are tried in equity. *In re Cory's Estate*, 184 N.W.2d 693, 696–98 (Iowa 1971) (noting that the decision in *Cory's Estate* "nullifies many of our cases decided before adoption of the probate code holding probate cases were law actions and the decision of the judge in such action had the force and effect of a verdict on appeal"). "Attorney fees are included in the definition of costs of administration." *Id.* at 696 (citing Iowa Code § 633.3(8)). Therefore, a proceeding to determine the award of attorney fees is tried in equity, and our review is de novo. *In re Estate of Wulf*, 526 N.W.2d 154, 156 (Iowa 1994) ("It follows that hearings dealing with the costs of administration are equitable in nature and our review is therefore de novo."); *Bass v. Bass*, 196 N.W.2d 433, 435 (Iowa 1972) ("[A] hearing on the allowance of attorneys' fees stands in equity, being thus reviewable de novo.").

Though our review on an action for the allowance of attorney's fees is de novo, we review a district court's decision that services were extraordinary under section 633.199 for abuse of discretion. *See In re Estate of Brady*, 308 N.W.2d 68, 74–75 (Iowa 1981) ("We do not believe the trial court abused its discretion in finding Mr. Heiserman's litigation services were compensable as extraordinary services under this

standard."); *see also Wulf*, 526 N.W.2d at 156 (reviewing a district court's application of section 633.199 and noting that "[w]e accord the trial court considerable discretion in taxing executor attorney fees to estates"). "An abuse of discretion occurs when the district court exercises its discretion on grounds or for reasons that are clearly untenable, or to an extent clearly unreasonable." *Quad City Bank & Trust v. Jim Kircher & Assocs., P.C.*, 804 N.W.2d 83, 92 (Iowa 2011); *see also State v. Nelson*, 791 N.W.2d 414, 419 (Iowa 2010). " 'A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law.' " *Quad City Bank & Trust*, 804 N.W.2d at 92 (citation omitted).

However, we review de novo a district court's determinations regarding the sufficiency of the filing that supports the fees that are requested for those services. *In re Estate of Mabie*, 401 N.W.2d 29, 32 (Iowa 1987) (finding, on de novo review, that an attorney had failed to meet "his burden of proving the necessity for the services for which he seeks extraordinary fees by the filing of a mere itemization of all services performed for the estate"). Accordingly, we will review the district court's determination that the services Wessels and SLH seek compensation for in the 2009 application were in fact necessary and extraordinary services to the estate for an abuse of discretion. *See Brady*, 308 N.W.2d at 74–75. We will review de novo the district court's determination that Wessels and SLH provided sufficient documentation in the 2009 application to justify the award of fees for those extraordinary services. *Mabie*, 401 N.W.2d at 32.

### III. Discussion.

The 2009 application requested $15,845.50 in fees for extraordinary services and expenses for Wessels, reimbursement for

actual and necessary extraordinary expenses consisting of $17,952.91 in legal fees for SLH, as well as $631.79 in expenses, all pursuant to section 633.199. All of the fees requested in the 2009 application were for extraordinary services. Willows resisted, claiming that the only service provided was defending the prior applications for fees in the prior appeals and that section 633.199 does not allow an attorney to receive fees or reimbursement for defending a fee award. Alternatively, Willows claims that even if section 633.199 allows fees for defending fee awards, Wessels failed to adequately prove he was entitled to fees and expenses. Willows also claims the district court erred in awarding fees beyond the amount allowed in the court of appeals' April 8, 2009 ruling. Finally, Willows claims that SLH was Wessels' personal attorney, not the attorney for the estate, and therefore, it is not entitled to payment from the estate. Alternatively, if SLH was the estate's attorney, Willows argues the firm failed to comply with Iowa Rule of Probate Procedure 7.2 and should therefore not be compensated.[4] We will address each of these arguments in turn.

---

[4]At this point, we note that the court of appeals decision and the parties' further review materials make reference to section 633.315 and the "good faith and just cause" requirement contained therein. That section relates to will contests and has no bearing on the present dispute. We note that portions of *In re Estate of Wulf*, 526 N.W.2d 154 (Iowa 1994) and *In re Estate of Brady*, 308 N.W.2d 68 (Iowa 1981) refer to sections 633.315 and 633.199. *See Wulf*, 526 N.W.2d at 156; *Brady*, 308 N.W.2d at 71. In *Wulf*, we were reviewing a district court's decision to award attorney fees to an executor for participating in a will contest. 526 N.W.2d at 156. Likewise, one of the issues in *Brady* was whether attorney fees could be awarded under section 633.199 for participating in a will contest under section 633.315. 308 N.W.2d at 71–72. In both of those cases, we discussed whether the executor acted with "good faith and just cause." *Wulf*, 526 N.W.2d at 156; *Brady*, 308 N.W.2d at 71–72. This discussion was necessary because section 633.315 only allows for attorney fees if the executor "defends or prosecutes any proceedings in good faith and with just cause." Section 633.199 requires fees be "just and reasonable" but does not contain a good faith and just cause requirement, and we reject any implication to the contrary in our past cases.

**A. The Scope of Section 633.199.** This case requires us to interpret section 633.199 to determine under what circumstances, if any, the legislature intended defending an application for fees to be a necessary and extraordinary service to an estate. If the language of the statute is plain and unambiguous, we need not look to principles of statutory construction. *Estate of Ryan v. Heritage Trails Assocs., Inc.*, 745 N.W.2d 724, 730 (Iowa 2008). "If reasonable persons can disagree on a statute's meaning, it is ambiguous." *Id.* (citation and internal quotation marks omitted). Section 633.199 reads:

> Such further allowances as are just and reasonable may be made by the court to personal representatives and their attorneys for actual necessary and extraordinary expenses or services. Necessary and extraordinary services shall be construed to also include services in connection with real estate, tax matters, and litigated matters.

Litigated matters may include defending fee awards, and defending fee awards may be a "necessary and extraordinary service" to an estate. However, the statute does not make clear in the plain language exactly what services are encompassed in "litigated matters." It is possible litigated matters was meant to refer only to lawsuits where the estate is a party and not situations where the estate's attorney's fee is at issue. It is also not apparent from the plain language whether defending a fee that will ultimately go the estate's own attorney is a "necessary and extraordinary service" to the estate. Because reasonable persons could disagree, the plain language of the statute is ambiguous, and we must turn to the principles of statutory construction. *See Ryan*, 745 N.W.2d at 730.

We have stated our principles of statutory construction as follows:

> The purpose of statutory interpretation is to determine the legislature's intent. We give words their ordinary and common meaning by considering the context within which

they are used, absent a statutory definition or an established meaning in the law. We also consider the legislative history of a statute, including prior enactments, when ascertaining legislative intent. When we interpret a statute, we assess the statute in its entirety, not just isolated words or phrases. We may not extend, enlarge, or otherwise change the meaning of a statute under the guise of construction.

*Doe v. Iowa Dep't of Human Servs.*, 786 N.W.2d 853, 858 (Iowa 2010) (citations omitted).

Attorney fees for representing an estate are governed by statute, and "statutory authority is necessary for any fee award." *Brady*, 308 N.W.2d at 74. Section 633.198 allows an attorney for the personal representative to receive fees "not in excess of the schedule of fees herein provided for personal representatives." Iowa Code § 633.198. Personal representatives are allowed reasonable fees for "ordinary" services rendered to the estate, and the maximum allowable fees for ordinary services depends on the size of the estate. *Id.* § 633.197. If personal representatives, or their attorneys, provide "actual necessary and extraordinary expenses or services" to the estate, the attorney or personal representative can receive compensation beyond the amount allowed for in the fixed schedule listed in section 633.197. *Id.* § 633.199. Under section 633.199, "necessary and extraordinary services shall be construed to also include services in connection with real estate, tax matters, and litigated matters." *Id.*[5]

---

[5]In 2007, the legislature expanded the scope of necessary and extraordinary services covered by section 633.199. The relevant portion of the statute now reads as follows:

> Necessary and extraordinary services shall be construed to include but not be limited to services in connection with real estate, tax issues, disputed matters, nonprobate assets, reopening the estate, location of unknown and lost heirs and beneficiaries, and management and disposition of unusual assets.

2007 Iowa Acts ch. 134, § 10. However, the new language applies only to the estates of decedents dying on or after July 1, 2007, and would therefore not apply to this case. *See id.* § 28(2).

We note that the legislature chose the word "include" as opposed to the word "means" when drafting the section at issue. *See id.* (stating extraordinary services "*includes* real estate, tax matters, and litigated matters" as opposed to stating extraordinary services "*means* real estate, tax matters, and litigated matters"). A statute that "declares what it 'includes' is more susceptible to extension of meaning by construction than where the definition declares what a term 'means.'" 2A Norman J. Singer & J.D. Shambie Singer, *Sutherland Statutory Construction* § 47:7, at 305 (7th ed. 2007) [hereinafter Singer]. This statute also contains a general term ("necessary and extraordinary services") followed by specific terms that are examples of the general term ("real estate, tax matters, and litigated matters"). *See* Iowa Code § 633.199. Listing a general term and then supplying specific examples is a "common drafting technique designed to save the legislature from spelling out in advance every contingency in which the statute could apply." 2A Singer, § 47:17, at 370–73. Defining a term in this way "recognizes and gives effect to both the specific and general words by using the class indicated by the specific words to extend the scope of the statute with the general words to include additional terms or objects within the class." *Teamsters Local Union No. 421 v. City of Dubuque*, 706 N.W.2d 709, 715 (Iowa 2005).

Just as the legislature has not defined the precise contours of what services are necessary and extraordinary under section 633.199, our cases have also refrained from making a "pronouncement of a precise test for the governance of this issue." *Wulf*, 526 N.W.2d at 156. Instead, we have mirrored the legislature's approach and have "defined extraordinary services as 'those which "in character and amount [are] beyond those usually required." '" *Mabie*, 401 N.W.2d at 31 (quoting *Brady*, 308 N.W.2d at 74) (alternation in original). The determination of

whether a service is beyond those usually required is a factual determination and is left to the district court's broad discretion. *See Wulf*, 526 N.W.2d at 156–57; *Brady*, 308 N.W.2d at 74–75; *Bass*, 196 N.W.2d at 435; *Glynn v. Cascade State Bank of Cascade*, 227 Iowa 932, 939, 289 N.W. 722, 725 (1940).

We see nothing in section 633.199 that indicates the legislature intended to exclude defending an application for attorney fees from the definition of necessary and extraordinary services. The actions that are "necessary" will, of course, vary from case to case. "Extraordinary services" is also a broad term with a variety of meanings that change with context.[6] In order to give effect to both the general and specific words used by the legislature, we will not treat the examples of necessary and extraordinary services provided in section 633.199 as exhaustive. *See Teamsters Local Union No. 421*, 706 N.W.2d at 715. It is possible that administrative tasks could be considered extraordinary services. For example, we have found that a district court did not abuse its discretion when it determined that defending a final report was an extraordinary service which entitled the attorney to fees. *Brady*, 308 N.W.2d at 74–75. In that same case, we also held that defending a final report on appeal was an extraordinary service to the estate. *See id.* at 75. By citing these examples, we are not stating that defending a final report in front of the district court or on appeal is always an

---

[6]According to the terms of the statute, necessary and extraordinary services "shall be construed to include services in connection with real estate, tax matters, and litigated matters." Iowa Code § 633.199. Responding to a beneficiary's appeal from a district court ruling could be considered a "litigated matter." However, because the statute does not limit necessary and extraordinary services to the tasks listed in section 633.199, it is not necessary to determine whether defending a ruling that, among other things, awards attorney fees, is a litigated matter. Our task is to determine whether Wessels' actions constitute necessary and extraordinary services, not whether they are "a litigated matter."

extraordinary service. To the contrary, we have held that it is not possible to define a precise test of what services are extraordinary as opposed to ordinary. *See Wulf*, 526 N.W.2d at 156. We reaffirm that principle today.

As part of his argument, Willows claims that allowing fees for defending a fee application is a minority viewpoint that has been properly rejected by a majority of jurisdictions. He cites several cases in support of this proposition. *See In re Painter's Estate*, 628 P.2d 124, 126 (Colo. App. 1980); *In re Andrews' Appeal*, 826 A.2d 1267, 1272–74 (Conn. App. Ct. 2003); *In re Estate of Halas*, 512 N.E.2d 1276, 1286 (Ill. App. Ct. 1987); *Inlow v. Estate of Inlow*, 735 N.E.2d 240, 253–54 (Ind. Ct. App. 2000); *In re Sloan Estate*, 538 N.W.2d 47, 49–50 (Mich. Ct. App. 1995); *In re Estate of Larson*, 694 P.2d 1051, 1059–60 (Wash. 1985), *abrogated by statute* Wash. Rev. Code Ann. § 11.96A.150(1) (West, Westlaw through March 26, 2012), *abrogation recognized in In re Estate of McCuen*, 137 Wash. App. 1017, 2007 WL 512541, at *4 (Feb. 20, 2007). Wessels points to *In re Estate of Trynin*, 782 P.2d 232 (Cal. 1989), to support his claim that section 633.199 allows a district court to award fees for defending a fee claim. 782 P.2d at 239.

While the cases cited by Willows address the issue of fees for defending fees, only one of the cases cited by the parties addresses the precise issue presented to this court today. The California statute at issue in *Trynin*, like section 633.199, divides fees into those awarded for ordinary services and those awarded for extraordinary services. *Id.* at 232–33. As the Indiana Court of Appeals noted in *Inlow*, the ordinary–extraordinary dichotomy found in the California statute was not present in the Indiana statute that led to the categorical ban on so-called "fees for defending fees." 735 N.E.2d at 252–53 & n.9. The court noted that

the statutes at issue in *Inlow, Larson, Sloan,* and *Halas* did not have "extraordinary services" provisions and distinguished *Trynin* on that basis. *See id.* at 251–53 & n.9. The statutes at issue in *Painter* and *Andrews* also did not contain the ordinary–extraordinary dichotomy found in the Iowa and California statutes. *See Painter,* 628 P.2d at 124–26 (discussing Colo. Rev. Stat. Ann. § 15-12-721 (2009), *repealed by* 2011 Colo. Sess. Laws ch. 101, § 27); *Andrews' Appeal,* 826 A.2d at 1272–74. Because the statute at issue in *Trynin* is most similar to Iowa's, we feel *Trynin*'s reasoning is the most helpful in deciding the case before us.

When asked to determine whether California's statute might permit an attorney to receive fees for defending a fee request, the court stated,

> We conclude . . . that extraordinary services compensable under [the statute] include work reasonably performed by the attorney to establish and defend the fee claim. This does not mean, however, that an additional award of fees for fee-related services is invariably required. Where the trial court reasonably concludes that the amounts previously awarded the attorney for both ordinary and extraordinary services are adequate, given the value of the estate and the nature of its assets, to fully compensate the attorney for all services, including fee-related services, denial of a request for fee-related fees would not be an abuse of discretion.

*Trynin,* 782 P.2d at 239. This conclusion mirrors our own. Under the statutory scheme enacted by the legislature, the district court is to determine whether a service is necessary and extraordinary, and the appellate courts must review that decision for an abuse of discretion. Therefore, like the *Trynin* court, we decline to create a categorical rule stating that the defense of an application for fees is never an extraordinary service under section 633.199, and instead leave that

decision to the sound discretion of the district court, to be made based on the individual facts of each case.

**B. The Services Provided by Wessels in the 2009 Application.**
Having determined that a court may award fees for defending an application for fees, we must determine whether Wessels has shown he is entitled to such fees in this case. Prior to awarding fees for extraordinary services, the district court must make a determination that the services rendered were both necessary and extraordinary. We review these determinations for abuse of discretion. *See Brady*, 308 N.W.2d at 74–75.

Wessels filed the 2007 application on behalf of the estate, seeking, among other things, fees for necessary and extraordinary services provided between March 23, 2005, and February 1, 2007.[7] Willows objected. Wessels defended the application, as he was obliged to do, and it was granted in its entirety. Willows then appealed. On appeal, Wessels successfully defended the application on a majority of the issues presented, but the case was remanded to properly determine which of Wessels' services were ordinary and which were extraordinary. Wessels filed a revised fee application, which was contested, granted by the district court, appealed, and subsequently modified by the court of appeals. At the conclusion of the litigation and appeals arising out of the 2007 application, Wessels filed the 2009 application, which sought fees for necessary and extraordinary services in connection with defending the 2007 application. The district court found the services Wessels listed in the 2009 application were "reasonable, ordinary, and required services

---

[7]Willows claims the court of appeals decision on the remanded 2007 application bars Wessels from receiving any of the fees requested in the 2009 application. The 2009 application requests fees for services provided on or after February 1, 2007. Wessels has not received fees for services provided on or after February 1, 2007. Willows' claim on this issue is therefore without merit.

that were not ordinary services, and were required by the appeal filed by the objector. . . . These fees were incurred and made necessary by the appeals filed by the objector."[8]

Willows claims defending the 2007 application on appeal and handling the remand and the appeal of the remand were not "necessary for the protection of the estate," and were therefore not necessary under section 633.199. The language used by Willows comes from *In re Carmody's Estate*, 163 Iowa 463, 465–66, 145 N.W. 16, 17 (1914), where we stated, "To justify the allowance of anything in excess of the statutory commissions, the executor or administrator must have actually rendered services of an extraordinary character, and these must have been necessary for the protection of the estate." More recently, however, we have considered those services that *benefit* the estate to be necessary, as opposed to only those services which *protect* the estate. *See Brady*, 308 N.W.2d at 74 (noting section 633.199 "authorizes fees only for services which protect or benefit the estate"). We also note that a service does not have to directly benefit or protect an estate in order to be a "necessary" service. *Accord Trynin*, 782 P.2d at 235 ("Services that do not directly benefit the estate in the sense of increasing, protecting or preserving it are nonetheless compensable if the estate's attorneys or representatives in performing the services were 'acting in consonance with the fiduciary duties imposed upon them.' " (citation omitted)).

Wessels contends that his services were necessary and benefitted the estate. The district court agreed, finding Wessels' fees were "required

---

[8]The district court's conclusion is somewhat contradictory. In the quoted sentence, the court calls the services ordinary, but then goes on to say that they are "not ordinary services." However, when this sentence is viewed in the context of the district court's ruling and the fact that it found Wessels was entitled to extraordinary fees, it becomes clear that the district court believed Wessels performed extraordinary services for the estate.

to protect the executors of the estate and the estate." The first appeal of the 2007 application involved several issues other than Wessels fee request. As part of that appeal, Wessels defended removing Willows as an executor due to a conflict of interest. Removing an executor with a conflict of interest protects an estate, and therefore, even under the narrow definition found in *Carmody*, it was "necessary" for Wessels to defend the 2007 application on appeal.

Following remand, the only issue left to determine was whether the services Wessels provided were in fact extraordinary. However, this limited purpose does not mean Wessels' actions were no longer "necessary." Once Wessels defended the 2007 application on appeal, he was required to file a revised application in order to comply with the court of appeals instructions on remand. As a result, the district court found the application that Wessels filed on remand was "made necessary" by Willows' appeals. The district court observed that if presenting reasonable arguments to an appellate court when an interested party objects to a fee request is not considered a necessary service, then any objector could force the attorney to work for no pay. This observation has merit. As the attorney for the estate, Wessels was obligated to defend the estate's filing from Willows' appeal and to file the required, revised application on remand. Because Wessels' defense of the application benefitted the estate and was made necessary by Willows' appeals, we find the district court did not abuse its discretion when it found Wessels' services were necessary under section 633.199. This was not an erroneous application of the law.

To be compensable under section 633.199, the services provided by an attorney must not only be necessary, they must also be extraordinary. The district court found Wessels' actions in defense of the

2007 application were extraordinary services. "We have defined extraordinary services as 'those which "in character and amount [are] beyond those usually required." ' " *Mabie*, 401 N.W.2d at 31 (citation omitted) (alteration in original). Most estates do not involve a dispute over fees for extraordinary services that requires numerous district court hearings and two court of appeals opinions. Thus it was not "clearly unreasonable" for the district court to determine Wessels provided necessary and extraordinary services to the estate. *See In re Estate of Roethler*, 801 N.W.2d 833, 837 (Iowa 2011) (holding a court abuses its discretion when it exercises discretion on untenable or unreasonable grounds). The district court also did not abuse its discretion when it determined Wessels' actions in defending the 2007 application were beyond those usually required and were a necessary and extraordinary service.

Having established that Wessels provided necessary and extraordinary services to the estate when he defended the 2007 application, we now turn to the 2009 application to determine whether it complies with the applicable probate rule. Iowa Rule of Probate Procedure 7.2(3) governs the procedure for requesting fees for extraordinary services. A request for payment for extraordinary services can be made in the final report or by separate application. Iowa Ct. R. 7.2(3). The attorney seeking fees bears the burden of proving that the fees should be paid. *Id.* The request for payment for extraordinary services

> shall include a written statement showing the necessity for such expenses or services, the responsibilities assumed, and the amount of extra time or expense involved. In appropriate cases, the statement shall also explain the importance of the matter to the estate and describe the results obtained.

*Id.* The statement required by the rule "allows the court to make an informed decision regarding the necessity and value of the attorney's claimed extra services to the estate." *Mabie*, 401 N.W.2d at 32. We have noted that "[i]t is not the role of this court or the district court to divine those services that are extraordinary from an attorney's itemization of services. Rule [7.2(3)] clearly requires a written statement, to assist the court and make a better record, in addition to the itemization." *Id.* An attorney is not entitled to extra compensation if he or she does not follow rule 7.2(3). *Id.* We review de novo whether an attorney has complied with rule 7.2. *Id.*

Wessels complied with rule 7.2(3) when he completed the application at issue today. He filed a written statement indicating the necessity of the services he provided and the responsibilities he assumed. Wessels pointed out that Willows appealed the estate's fee application and various other matters and, that as the attorney for the estate, Wessels was obligated to defend the filings he had made on the estate's behalf. Wessels' itemized billing statement indicated the amount of extra time involved, a description of the service provided, and importantly, which itemized services he provided were ordinary and which were extraordinary. He has not asked us to "divine those services that are extraordinary from" the list of services he provided. *Id.* On our de novo review, we determine Wessels has complied with rule 7.2(3) and is therefore entitled to $15,845.50 in fees for extraordinary services.

**C. The Services Provided by SLH.** Willows raises two issues regarding the fees that the district court awarded to SLH. First, he claims SLH functioned as the attorney for Wessels personally and did not represent the estate. Second, he claims that even if SLH represented the

estate, the fee request does not comply with applicable law and should therefore be denied.

Wessels claims that SLH represented the estate, as opposed to him personally. The first court of appeals decision, issued December 28, 2007, which remanded the 2007 application to the district court, listed Eric M. Knoernschild of SLH as the attorney for Pete Wessels. Upon remand, the amended 2007 application initially requested fees for SLH. These fees were for services provided from February 2, 2007, to February 16, 2007. The bill was addressed to Wessels but indicated it was for work done on the Bockwoldts' estates. However, this request was withdrawn from the amended 2007 application on February 13, 2008. The transcripts of the February 25 and April 24, 2008 hearings on the amended 2007 application list Eric M. Knoernschild as the attorney for Pete Wessels. On August 4, 2008, in response to Willows' appeal from the district court's decision approving the amended 2007 application, Wessels filed a motion requesting the district court appoint Eric M. Knoernschild and Kenza B. Nelson of SLH as attorneys for the appeal. The district court "conclude[d] it ha[d] no authority to decide the motion presented." Nelson signed the brief the estate filed in response to the appeal of the ruling on remand. The court of appeals decision on the remanded application listed attorneys Knoernschild and Nelson of SLH as the attorneys for the estates and did not list an attorney for Wessels personally.

Regarding the services SLH provided, the 2009 application asserts that Wessels and SLH "have acted for the Estate in regard to contested and litigation matters." Wessels also claims, "The Estate's executor hired [SLH] as its attorney to assist in the hearing on Wessels' application for approval of extraordinary fees following remand from the first appeal to

the Court of Appeals and in the second appeal to the Court of Appeals." Wessels further claims that "Wessels' and [SLH's] actions defending those fee awards are a direct extension of the original beneficial services provided by Wessels to the Estate." In addition to handling the second appeal, Wessels notes that SLH was hired after the first appeal because "Wessels was deposed and called as a witness to address the services he performed for the Estate. For this reason, the Estate hired [SLH] to assist in litigation matters related to Wessels' application." By assisting in the hearings on the amended 2007 application and handling the appeal of the remanded 2007 application, Wessels claims SLH was assisting the estate and not him personally. We agree.

We give a district court great deference when ruling on whether services benefit an estate. *Brady* is instructive on this point. There, we found the district court did not abuse its discretion when it refused to award a second law firm fees for assisting with litigation because the district court found "the employment was not reasonably necessary for protection of the estate's interests." *Brady*, 308 N.W.2d at 74. It was, however, appropriate to award the second firm fees for appellate work done on the same case. *Id.* at 75. The district court refused to order fees for defending a malfeasance action against the executor, finding those services did not benefit the estate in any way. *Id.* at 74. The district court similarly found that hiring an expert witness on attorney fees did not benefit the estate and accordingly denied the application for fees. *Id.* This finding was also not an abuse of discretion. *Id.* The district court did find that litigation efforts defending the final report were extraordinary services that entitled the attorney to compensation. *Id.* We upheld this finding as being within the court's discretion. *Id.* at 75.

In this case the district court found "the attorney's fees for [SLH] of $17,957.91 are reasonable, appropriate and required to protect the executors of the estate and the estate" and approved the fees requested. SLH assisted with the preparation of the estate's fee request and acted as counsel when Wessels was called on to be a witness and when the ruling was later appealed. These services may have benefited Wessels, but they also benefited the estate by ensuring the fees awarded for extraordinary services complied with the statute. Some of the documents in the file indicate that SLH was the attorney for Wessels as opposed to the estate. However, these inconsistencies are insufficient to lead us to conclude the district court abused its discretion when it determined the services provided by SLH benefited the estate and were therefore eligible for compensation under section 633.199. The only services SLH claims it provided to the estate were related to litigation and appellate services. It was not an abuse of discretion to determine these services were the type of services that are compensable under section 633.199.

Having determined that the district court did not abuse its discretion in finding that SLH was acting as the estate's attorney and that the litigation and appellate services provided by SLH could constitute necessary and extraordinary services, we now turn to Willows' claim that SLH did not comply with applicable law when proving up its fee request.

All of the fees requested for SLH in the 2009 application are asserted to be for extraordinary services "in regard solely to representation relative to litigation and appeal matters." In support of these fees, Wessels submitted a list of sixteen "Advances" in his itemized bill. The advances were labeled as "Outside professional fee STANLEY LANDE & HUNTER" and totaled $17,952.91. The statement of

extraordinary fees stated the necessity and importance of SLH's services and claimed SLH spent a total of 101.7 hours working on the estate. In the reply to Willows' resistance to the 2009 application, Wessels attached "a summary of services performed by [SLH] for the Estate." He added, "If the Court needs additional information to determine whether the services provided by [SLH] were extraordinary, [SLH] is prepared to submit an itemized billing statement."

The summary describes SLH's services as follows:

Ordinary services rendered in connection with this case: reviewing, preparing, and drafting documents for hearings on applications for approval of fees and other matters, following remand from the Court of Appeals; representation at hearings; attending deposition of Attorney Wessels; office conferences with Attorney Wessels concerning the case; reviewing appeal documents and briefs submitted by Willows; drafting and filing Court of Appeals briefs; research regarding the case; drafting correspondence to all parties involved regarding status of the case.

The district court's ruling found that the itemizations contained in *Wessels'* bill were for "services that were not ordinary services." The only finding the district court made that specifically referenced SLH's services was, "The Court therefore FINDS, that the extraordinary fees of Pete Wessels of $15,845.50 and the attorney's fees for [SLH] of $17,957.91 are reasonable, appropriate and required to protect the executors of the estate and the estate."

While we give broad discretion to the district court's determinations of whether an attorney's services were necessary, extraordinary services to the estate, we review de novo whether an attorney has met his burden and proven his fee under section 633.199 and rule 7.2. *See Mabie*, 401 N.W.2d at 32. In *Mabie*, we reviewed a decision where an attorney had submitted an itemized application, but failed to indicate which items were ordinary and which were

extraordinary. *See id.* We stated, "It is not the role of this court or the district court to divine those services that are extraordinary from an attorney's itemization of services. Rule [7.2(3)] clearly requires a written statement, to assist the court and make a better record, in addition to the itemization." *Id.* We then reversed the district court, finding there was an inadequate basis to support the award of extraordinary fees. *Id.*

This case presents a different problem. Wessels and SLH claimed all of the services SLH provided the estate were extraordinary but failed to present any itemization describing the time spent performing each of those services in greater detail. Willows claims the statement Wessels provided is inadequate. The statement of extraordinary fees explains the necessity for the services, which we have already discussed. It also explains the responsibilities SLH assumed, notably preparing appeals and assisting Wessels with litigation surrounding the 2007 application on remand. Finally, the application includes the amount of extra time involved, which was 101.7 hours. However, unlike Wessels' application, the SLH application does not offer any sort of breakdown of how those hours were spent.

Section 633.199 only allows "just and reasonable" fees to be awarded for necessary and extraordinary services. The court of appeals has summarized our case law regarding what constitutes a reasonable fee as follows:

> In endeavoring to ascertain a reasonable legal fee, relevant factors include the time necessarily spent by the attorney, the nature and extent of the service, the amount involved, the difficulty of handling and the importance of the issues, responsibility assumed, results obtained and the experience of the attorney.

*In re Estate of Bolton*, 403 N.W.2d 40, 44 (Iowa Ct. App. 1987); *see also Boyle v. Alum-Line, Inc.*, 773 N.W.2d 829, 832–33 (Iowa 2009) (using the

same factors to determine whether attorney fees were reasonable under the Iowa Civil Rights Act and Title VII of the Civil Rights Act of 1964).[9] The applicant bears the burden of proving the fees should be awarded. Iowa Ct. R. 7.2(3); *see also In re Metcalf's Estate*, 227 Iowa 985, 994, 289 N.W. 739, 743 (1940).

In *Metcalf*, we addressed a similar situation where an attorney had requested fees for extraordinary services, but only documented his time in broad and approximate terms. *See Metcalf*, 227 Iowa at 988, 289 N.W. at 740. The district court found the attorney provided extraordinary services and that the reasonable value of the services was $3500. *Id.* at 988–89, 289 N.W. at 740–41. Accordingly, the court granted the fee request. *Id.* at 989, 289 N.W. at 741. The beneficiaries objected, noting, among other things, "that services were not itemized" and the fees were unreasonable. *Id.* at 992, 289 N.W. at 742. We stated that "[i]t requires but a glance at the statement of the attorney . . . to apprise one that the same was too indefinite to furnish a proper legal basis for [a finding as to the extent of value of the alleged extraordinary services]." *Id.* at 993, 289 N.W. at 743. The application for SLH's fees poses a similar problem.

Willows resisted the application for fees for SLH, pointing out that other than the general statement of the type of duties performed, there was no "documentation or evidence showing the services performed by [SLH] from which the Court can determine whether the advances are reasonable or for the benefit of the estate." Without an itemized statement from SLH, Willows argues that "there is no way for the Court

---

[9]We note that the legislature added these factors to Iowa Code section 633.199 in 2007. 2007 Iowa Acts ch. 134, § 10. However, as noted earlier, the decedent in this case passed away prior to July 1, 2007, before the 2007 amendment took effect.

or interested parties to know whether the firm and Wessels double-billed for the work."

We agree. Without a more detailed breakdown, such as the one Wessels provided to justify his own fees, it was impossible for the district court to determine whether the fees provided by SLH were "reasonable." Specifically, it is impossible to determine whether SLH and Wessels duplicated each other's efforts. In his reply brief in support of the fee application, Wessels offered to provide an itemized breakdown of SLH's services to the estate, should the court require it. The district court should have insisted he do so. Without an itemized billing statement, it is not possible for the district court to evaluate Willows' claims that SLH and Wessels may have duplicated their efforts and spent an excessive amount of time defending the appeal.

Since the application submitted does not support an award of fees for extraordinary services, it should not have been granted by the district court. *See Mabie*, 401 N.W.2d at 32. When a district court awards attorney fees without specifically addressing complaints raised by one of the parties, and the basis for the court's decision is not clearly evident from the court's ruling, we have found it appropriate to remand the case to the district court to review the application and make specific findings. *Boyle*, 773 N.W.2d at 833–34. Accordingly, the $17,957.91 in fees awarded to SLH is set aside, and the case is remanded. The district court is to request an itemized statement of the services provided by SLH and make a determination as to the reasonableness of the fee request after reviewing the exact services SLH provided to the estate.

## IV. Disposition.

We affirm the district court's finding that Wessels and SLH provided necessary and extraordinary services to the estate of Loren

Bockwoldt when they defended the estate's application for fees. This finding does not constitute an abuse of discretion on the part of the district court. On our de novo review, we find Wessels' application was adequately supported, but SLH's was not. Accordingly, we vacate the decision of the court of appeals and affirm the holding of the district court in part and reverse in part. On remand, the district court is to award Wessels extraordinary fees of $15,845.50 and $631.79 in expenses. Since there is an inadequate basis to conclude SLH's fees were reasonable, the district court is to request an itemized statement of the extraordinary services provided by SLH and evaluate SLH's fee request accordingly.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED.**

All justices concur except Mansfield, J., who takes no part.