# IN THE COURT OF APPEALS OF IOWA

No. 13-1734
Filed November 13, 2014


**GENE UHLENHAKE, ROBERT UHLENHAKE and KRISTINE MCCORMACK, Beneficiaries of the ESTATE OF MILDRED UHLENHAKE, and ROBERT UHLENHAKE, As Co-executor of the ESTATE OF MILDRED UHLENHAKE,**
    Plaintiff-Appellants,

**vs.**

**ROGER UHLENHAKE and BONITA EHLER, As Co-executors and Beneficiaries of the ESTATE OF MILDRED UHLENHAKE, and RICHARD UHLENHAKE, Beneficiary of the ESTATE OF MILDRED UHLENHAKE,**
    Defendant-Appellees.
_____


        Appeal from the Iowa District Court for Winneshiek County, Richard D.

Stochl, Judge.


        Three beneficiaries, one of whom is a co-executor of the Estate of Mildred

Uhlenhake, challenge the probate court's order granting the application of two

co-executors for reimbursement for attorney's fees.  **AFFIRMED IN PART,**

**REVERSED IN PART, AND REMANDED.**


        Dennis G. Larson of Larson Law Office, and Erik W. Fern of Putnam Law

Office, Decorah, for appellants.

        Richard S. Fry, William S. Hochstetler, and Dana L. Oxley for Shuttleworth

& Ingersoll, P.L.C., Cedar Rapids, for appellees.


        Heard by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**POTTERFIELD, J.**

Three beneficiaries of the Estate of Mildred Uhlenhake—Gene Uhlenhake, Kristine McCormack, and Robert Uhlenhake (who is also a co-executor)—challenge the probate court's ruling allowing reimbursement for attorney fees to co-executors Roger Uhlenhake and Bonita Ehler. They contend the issue of attorney fees was precluded by the principle of res judicata, the two co-executors did not meet their burden of proof with respect to showing just cause or benefit of the estate, the probate court denied them due process because it did not hold a hearing on their objections, and the attorneys were not previously designated or authorized to act on behalf of the estate.

We reject the contention that the issue of attorney fees was res judicata as nothing in the district court's February 2012 ruling determined whether any of the attorneys would or could be paid by the estate. We agree that Roger and Bonita are entitled to reimbursement for attorney fees incurred on behalf of the estate. But because the objectors asked for and were entitled to a hearing on the application, we reverse the court's attorney fee award and remand for a hearing on the application.

**I. Background Facts and Proceedings.**

Mildred Uhlenhake died testate on February 20, 2011. She was survived by six adult children: Richard Uhlenhake, Robert Uhlenhake, Kristine McCormack, Roger Uhlenhake, Gene Uhlenhake, and Bonita Ehler.

Gene had lived with his parents in their home and was living in that house at the time of Mildred's death. In the house Gene shared with them, Mildred and her late husband kept a safe. In 2008, Mildred and Gene entered into a contract

giving Gene the option, upon Mildred's death, to purchase "the house and property located at 201 N. Mary Street, Ossian, Iowa 52161" for $85,000 as set forth in Mildred's will. Mildred acknowledged receipt of $1000. The sales agreement provided, in part:

> Fulfillment of this Sales Agreement shall be made at the time of my death or in the event of a medical or mental disability resulting in permanent hospitalization and/or residence in a nursing home as ordered by a physician. . . . Payment of the balance of this Agreement in the amount of eighty four thousand dollars ($84,000.00) is agreed to by both parties, and may either be deducted from Gene's share of my Estate in the event I am deceased, or in equal annual payments first commencing no more than twelve months from the date of my death over the course of five (5) years, without interest and in equal shares to my remaining children, or to their surviving children if a child of mine should predecease me.

Mildred's will was admitted to probate on March 14, 2011, and her children Robert, Roger, and Bonita were appointed co-executors. The fiduciaries designated Lance Lorentzen as their attorney.

On July 22, 2011, Gene filed a claim against Mildred's estate, stating he was tendering payment for Mildred's house pursuant to the sales agreement, electing to make five equal annual payments, and demanding the estate "deliver the property as describe[d] in the contract." Gene also claimed he was entitled to the execution of a deed in fulfillment of a real estate contract for the family farm real estate Gene and Roger had purchased from Mildred as tenants in common.

On July 29, 2011, Lorentzen filed an application to withdraw as counsel for the co-executors due to the inability of the co-executors to agree on how to proceed.

On August 6, 2011, Mildred's safe was opened in the presence of five of the six siblings and about $108,000 and collectible coins were discovered. The siblings disagreed whether the cash should be included in the estate inventory.

On August 9, 2011, Roger and Bonita retained attorneys Richard S. Fry and William S. Hochstetler of Shuttleworth & Ingersoll, P.L.C. (Shuttleworth) to represent them in the estate. Shuttleworth filed an appearance on August 19. That same date, Shuttleworth, for Roger and Bonita, filed an application for directions in which they asserted the "estate proceedings were at a standstill." The application stated further:

> 5. As more fully explained below, the primary issue is the personal property in the Ossian residence. The other issue regarding the deed in fulfillment of the real estate contract is a matter between Roger Uhlenhake and Gene Uhlenhake as individuals and not as estate beneficiaries. The contract is not an asset of the estate. The Co-Executors duty is simply to sign a Court Officer deed after Roger Uhlenhake and Gene Uhlenhake decide on the "option to buy" terms that they have been discussing.
> 6. The primary issue is the Decedent's personal property, which was located in and about her personal residence in Ossian. At the time of death, Gene Uhlenhake lived with the Decedent in her residence in Ossian.
> 7. The Will gives Gene Uhlenhake an option to buy the "house and lot" at fair market value not to exceed $85,000. A copy is attached as Exhibit 1. He has indicated that he wishes to buy the residence.
> 8. Gene Uhlenhake, as the occupant of the residence before and after the death of Mildred Uhlenhake, has possession of the personal property.
> 9. Article Three, paragraph 1 of the Will provides that the personal property (automobiles, personal effects, household furniture and all other tangible personal property) should be distributed to the children with the following specific directions. The Will provision provides as follows: "My children can make distribution among themselves keeping in mind their needs and sentimental regard for individual items. If my children do not agree on the distribution of such property among themselves, then my executor shall distribute the property equitably among my children."

10. Following Mildred Uhlenhake's death, the Co-Executors were provided with access to the residence and began the process of sorting through the personal property. They recognized that some personal property belonged to Gene Uhlenhake. His property was separated from the Decedent's property. The Co-Executors were working with the other family members to reach an acceptable date when all six could be together at the residence to make distribution of the personal property. With one beneficiary living out of state, those arrangements had not yet been finalized.

11. However, more recently, Gene Uhlenhake has asserted a very different position regarding the personal property. Since Memorial Day, he has denied Co-Executors access to the personal property. This denial of access is preventing the Co-Executors from fulfilling their duty to file an accurate inventory in these proceedings.

12. Further, Gene Uhlenhake has asserted that the Decedent's personal property should be his. He has filed a claim in these proceedings to that effect. He bases his claim for the Decedent's personal property on a one-page September 23, 2008 Sales Agreement, . . . . The agreement provided for the sale to Gene Uhlenhake of the "house and property located at 201 N. Mary Street, Ossian, Iowa 52161".

13. Although initially all 6 children were in agreement that the personal property should be distributed to the six of them, Gene Uhlenhake is now claiming that the "house and property" language in the one-page Sales Agreement means the house, the property on which it is located, and the personal property in and around the house. In other words, he is claiming that he is buying the personal property under the "house and property" phrase of the Sales Agreement.

14. The undersigned Co-Executors do not believe that their mother, Mildred Uhlenhake, intended the Sales Agreement to include her personal property for [several reasons.]

The application asked that the court, among other things, set a hearing date, grant them access to the decedent's residence so the inventory could be completed, direct the co-executors in several respects, and "[a]pprove the retention of Shuttleworth & Ingersoll, P.L.C. to assist the co-executors in resolving the issues and completing the required estate procedures."

On August 25, 2011, the probate court granted Lorentzen's motion to withdraw.

On September 27, Gene filed a document responding to Roger and Bonita's application for directions, joining in Robert's separate application for directions,[1] and petitioning for the removal of Roger and Bonita as executors. In one paragraph responding to the application for directions, Gene stated, "Although Roger Uhlenhake and Bonita Ehler may have retained the services of Shuttleworth & Ingersoll, P.L.C., such services should be considered private services and not services rendered to the estate." Gene asked the probate court to remove Roger and Bonita as co-executors, contending they mismanaged the estate and failed to perform duties imposed by law.

On November 22, 2011, Shuttleworth filed a report and inventory of Mildred's estate on behalf of Roger and Bonita, co-executors. The filing notes, "Robert Uhlenhake, through his attorney, David Strand, was invited to participate in the filing of this Report and Inventory, but declined to do so."

On December 6, 2011, Lorentzen filed an application for compensation of fiduciary and attorney, noting the value of the gross assets of the estate were $1,547,046.86; the maximum fee pursuant to statute was $31,060.93; and requesting $5960 per the itemized attachment. The application was approved on January 3, 2012, without resistance.

---

[1] The court file contains an unsigned "application for directions" stamped "copy" and file-stamped February 3, 2012, which states co-executor Robert, by his own attorney, Strand, "agreed there was a breakdown of agreement in the handling of the claim involving one of the beneficiaries, Gene Uhlenhake. . . . It is felt by the co-executor that the personal property that is requested by Gene Uhlenhake is of little to no value and should not be subject of this litigation." Robert's application requested the "contract be fulfilled and that the undersigned by appointed as attorney for the estate." Although a filed copy was not in the court file, at the February 1 hearing, the parties informed the court they had all received copies of Robert's application for directions and were prepared to address it.

An evidentiary hearing was held on February 1 and 2, 2012, on the pending applications for directions and the petition for removal. On February 13, the court (Judge Lingreen) filed an order, which included these findings:

> 14. Gene Uhlenhake resided with his mother, Mildred, in a house located at 201 North Mary Street, Ossian, Iowa. This residence is the subject matter of the purchase contract identified in Gene Uhlenhake's Claim Number One of his Claims in Probate.
>
> The evidence indicates that, although Gene Uhlenhake initially let the co-executors come into the home for the purpose of inventorying property, he later refused requests of Bonita Ehler and Roger Uhlenhake to enter the home. He claims ownership to the contents of the house, either as purchases made individually by him, as joint purchases made with his mother, and as items of "property" included in his purchase contract for the house.
>
> 15. Mildred Uhlenhake and her husband maintained a safe in the house on North Mary Street. All of Mildred's children, with the exception of Kristine McCormick, met at the house in the summer of 2011 for the purpose of inventorying the contents of the safe. Gene Uhlenhake had removed the safe from the home and brought it to the garage for purposes of the inventory. Collectible coins were found in the safe, as well as cash. Approximately $108,000 in cash was found in the safe. A disagreement arose among the siblings as to what to do with the cash. From the credible evidence, the Court finds Roger Uhlenhake, Bonita Ehler, and Richard Uhlenhake believed the money should be deposited into the estate's checking account. Gene Uhlenhake and Robert Uhlenhake believed the money should be kept in the safe. Ultimately, the money was divided into six equal portions of $18,000 and each of the five children present signed a written acknowledgement that he or she received $18,000. Gene Uhlenhake signed such an acknowledgement on behalf of Kris McCormick.
>
> Richard Uhlenhake took possession of a gold coin for the purpose of determining its value.
>
> From the credible evidence before the Court, the Court finds Bonita Ehler and Roger Uhlenhake have included the value of all monies found in the safe, in the entry for "cash" found in Schedule C of their "Report and Inventory" filed November 22, 2011.
>
> Gene Uhlenhake asserts Roger Uhlenhake and Bonita Ehler have mismanaged the estate and have failed to perform their duties.

The court found no evidence of mismanagement of the estate or credible evidence of failure to perform a duty. The court thus found no ground to remove Roger or Bonita as co-executors and dismissed Gene's petition.

The court did find it necessary to provide directions to the three co-executors:

> In the instant case, the Court finds cause to direct the co-executors and Gene Uhlenhake to participate in a trial scheduling conference for the purpose of scheduling trial on Gene Uhlenhake's Claim in Probate—Claim Number 1 (as to the house in Ossian).
> The Court also finds cause to direct that the contents removed from Mildred Uhlenhake's safe, including, but not necessary limited to, the cash, including collectible coin(s), be returned to the co-executors for depositing in the estate's bank account or otherwise maintaining and preserving the asset until the estate is concluded.

The court denied Robert's application for directions, and sustained Roger and Bonita's application for directions in part. The court ordered counsel for Roger and Bonita—Shuttleworth—to place the telephone call to court administration for the purpose of selecting a trial date. The court wrote, "At hearing on the Claim in Probate, the estate need not be represented by counsel, as the co-executors have secured their individual counsel and Claimant Gene Uhlenhake has individual counsel."

The court continued,

> 4. If the Court, upon trial of Gene Uhlenhake's first Claim in Probate, determines certain personal property was not included in the sale of the residence, the co-executors shall have access to decedent's residence for the purpose of completing the inventory of the personal property not included in the sale of the residence. They shall arrange for its distribution. Pending the Court's ruling on Gene Uhlenhake's Claim in Probate, Gene Uhlenhake shall not distribute or otherwise transfer the personal property owned by Mildren Uhlenhake at the time of her death.

> 5. Upon the Court ruling on Gene Uhlenhake's claim in Probate, the three co-executors shall mutually select a new attorney for the estate who shall take all necessary steps to conclude this estate. Counsel for the individual co-executors shall assist in the retention of a new attorney for the estate.

On February 29, 2012, Roger and Bonita filed a "petition for two-thirds rule" noting there were tasks that needed to be achieved in addition to resolving the issues of the decedent's personal property, and though conversations between the three co-executors had begun, unanimous consent "is not working, at least not yet." Roger and Bonita asked that the court enter an order directing that concurrence of two of the three co-executors was sufficient to take action.

On May 10, 2012, Shuttleworth, for Roger and Bonita, filed an application to sell real estate proposing to sell the Mildred's personal residence to Gene at a "below market" price in accordance with the decedent's wishes. Richard, Gene, and Robert each filed an objection or resistance to the application.

On July 18, 2012, an evidentiary hearing was held on Gene's claim concerning the sales agreement. Prior to the evidentiary hearing on the claim, the court heard arguments on the petition for two-thirds rule, which the court deemed a request for directions under Iowa Code section 633.76 (2011).[2] The court ruled in favor of Roger and Bonita, finding it "abundantly clear" the three co-executors were not going to agree with each other. The court stated,

---

[2] Iowa Code section 633.76 provides:

> Where there are two or more fiduciaries, they shall all concur in the exercise of the powers conferred upon them, unless the instrument creating the estate provides to the contrary. In the event that the fiduciaries cannot concur upon the exercise of any power, any one of the fiduciaries may apply to the court for directions, and the court shall make such orders as it may deem to be to the best interests of the estate.

The court concurs with the applicants and grants the application for the two-thirds rule. That being stated, the remaining executor—I would say the dissenting executor in that situation—shall have an ability then to apply to the court for further direction if that dissenting executor believes that the actions of the other two executors are in opposition to the best interest of the remaining beneficiaries or contrary to Iowa law. But I will not put the onus on the majority of voters to come to the court for this court to decide whether the inventory is correct or every minor issue related to this estate. That is not the role of the court. That is the role of the executors.

I would concur . . . that the other option that this court would have would be simply to remove all executors. That would be the next step if this continues. We will just remove all three executors. We will appoint an independent executor, who will charge this estate a considerable sum of money, and we will proceed from there.

But we are not at that point. The application is granted. All action of the estate may now be approved by two-thirds rule, only to be reviewed by the court if the dissenting executor feels it's necessary to have the court review that issue.

The court also ruled that in Gene's sales agreement with Mildred, the mention of "and property" did not include personal property.

On December 4, 2012, the three co-executors filed a designation of attorney selecting Kurt Olson to serve as attorney for the estate.

On August 16, 2013, Roger and Bonita filed an application for reimbursement of attorney's fees they had paid to Shuttleworth, both ordinary and extraordinary. In the application, they asserted,

18. It is clear under Iowa law that the fees paid to an attorney retained by less than all of the executors of an estate are compensable under Chapter 633 if the attorney's fees benefit the estate. *See Matter of Estate of Bolton*, 403 N.W.2d 40, 41 (Iowa Ct. App. 1987) (noting that a bank, appointed as a third co-executor, was authorized to employ its own attorney). Thus, while Shuttleworth & Ingersoll served as attorneys for Roger Uhlenhake and Bonita Ehler as Co-Executors, their actions are compensable attorney's fees where their fees were for the benefit of the estate. *Id.*; Iowa Code §[§] 633.198-.200. Further, Judge Stochl's granting of the "two-thirds rule" for decision-making among the Co-

Executors supports the action of the undersigned Co-Executors in retaining Shuttleworth & Ingersoll and having those legal fees and costs paid by the Estate.

They asserted Shuttleworth had arranged for the completion and filing of the inventory, reviewed and obtained information regarding real estate issues and prepared a real estate deed in fulfillment of the estate's obligation regarding the outstanding real estate contract, attended to tax matters and the filing of required interlocutory reports, and handled other required estate procedures.

Roger and Bonita noted the probate court had ruled favorably for them as co-executors in rejecting Gene's claim to remove them as executors, approving their submitted court officer deed, holding the personal property of the decedent did not belong to Gene, and holding the sale to Gene of the residence was subject to his obligation to pay basic expenses typical of real estate transactions. The application also stated:

> 24. The attorney's fees incurred by the Applicants were necessary and reasonable to properly and adequately address the contested issues. Further, resolution of each of these contested claims and issues in favor of the Applicants' position benefited the Estate by advancing the administration of the Estate and preserving the size of the estate. *See Matter of Estate of Wulf*, 526 N.W.2d 154, 157 (Iowa 1994) ("[A]n action benefits an estate if it involves increasing or preserving the size of the estate."). Each of the actions related to Gene Uhlenhake's challenges and claims further benefited the estate by determining the Decedent's desire to sell the residence to Gene Uhlenhake while preserving the personal property for the benefit of all of the beneficiaries. *See id.* ("An action may also benefit an estate if it determines or represents the decedent's desires and intentions as expressed in the will."). The attorney fees associated with defending and responding to the issues and claims made by Gene Uhlenhake were therefore properly incurred on behalf of the estate and should be compensated as extraordinary attorney's fees. Iowa Code § 633.199; *In re Wulf*, 526 N.W.2d at 157 (affirming payment of fees to executor's attorney related to a claimed entitlement to a portion of the estate's real estate that "affected the administration of

the estate by its impact on the total asset amount for distribution, the allocation to beneficiaries, and the tax consequences").

Attached to the application were Shuttleworth's monthly invoices, itemizing services rendered. The application stated further that the estate "had already incurred significant time and expense in connection with court hearings. A hearing on this matter is not requested."

On August 20, 2012, the probate court issued an "order prescribing notice and setting deadline for the filing of objections" to Roger and Bonita's application of reimbursement of attorney fees and costs. After setting the deadlines for objections and responses, the court stated it "shall then determine whether it is necessary or appropriate to set a time and date for a hearing on the application."

Robert, Gene, and Kristine each filed resistances. Robert argued "this case has presented a clash of personal interests" and no good existed to obligate the estate to Roger and Bonita's attorney fees. Kristine argued the engagement of attorneys by Roger and Bonita "was completely unnecessary" and claimed Roger and Bonita had "personal vendettas" against Gene and Robert. Gene filed a paragraph by paragraph response to the application, emphasizing Shuttleworth had not been appointed to represent the estate. With respect to paragraph 24, Gene responded, "Gene Uhlenhake Denies Paragraph 24 of the Application and reincorporates responses in other paragraphs here. Citations to *Matter of Estate of Wulf*, 526 N.W.2d 154, 157 (Iowa 1994), is inapplicable to the situation here." Gene requested that a hearing be scheduled.

On October 1, 2013, the court entered an order granting the application for reimbursement. The court wrote, "The Court has reviewed the file and finds the

fees incurred by Shuttleworth and Ingersoll were incurred on behalf of the estate and should be paid by the estate."

Gene, Robert (individually and as co-executor), and Kristine (the three of whom we will now simply refer to as "objectors") appeal.

## II. Scope and Standard of Review.

A proceeding concerning the award of attorney fees in a probate action is in equity, and our review is de novo. Iowa Code § 633.33; *In re Estate of Bockwoldt*, 814 N.W.2d 215, 222 (Iowa 2012). We give weight to the fact findings of the district court, especially considering the credibility of witnesses, but are not bound by them. *In re Estate of Roethler*, 801 N.W.2d 833, 837 (Iowa 2011).

## III. Merits.

On appeal, the objectors assert (1) the award of attorney fees was made in error because the probate court had previously stated there was no need to appoint the Shuttleworth firm as attorney for the estate. They also contend (2) co-executors Roger and Bonita did not meet their burden of proof. The objectors argue further (3) they were denied due process because the probate court did not hold a hearing on their objections. Finally, they complain (4) Shuttleworth was not designated or authorized to act on behalf of the estate and thus the estate should not be responsible for their fees.

Recently, in *Bockwoldt*, 814 N.W.2d at 223-24, our supreme court discussed the contours of the statutory provisions governing attorney fees in an estate proceeding. "Attorney fees for representing an estate are governed by statute, and 'statutory authority is necessary for any fee award.'" *Bockwoldt*, 814

N.W.2d at 223-24 (citation omitted). The court noted Iowa Code section 633.198 allows an attorney for the personal representative to receive fees "not in excess of the schedule of fees herein provided for personal representatives." *Id.* at 224.

> Personal representatives are allowed reasonable fees for "ordinary" services rendered to the estate, and the maximum allowable fees for ordinary services depends on the size of the estate. [Iowa Code] § 633.197. If personal representatives, or their attorneys, provide "actual necessary and extraordinary expenses or services" to the estate, the attorney or personal representative can receive compensation beyond the amount allowed for in the fixed schedule listed in section 633.197. *Id.* § 633.199. Under section 633.199, "necessary and extraordinary services shall be construed to also include services in connection with real estate, tax matters, and litigated matters." *Id.*
> . . . .
> Just as the legislature has not defined the precise contours of what services are necessary and extraordinary under section 633.199, our cases have also refrained from making a pronouncement of a precise test for the governance of this issue. Instead, we have mirrored the legislature's approach and have defined extraordinary services as those which in character and amount [are] beyond those usually required. The determination of whether a service is beyond those usually required is a factual determination and is left to the district court's broad discretion.
> . . . The actions that are "necessary" will, of course, vary from case to case. "Extraordinary services" is also a broad term with a variety of meanings that change with context. In order to give effect to both the general and specific words used by the legislature, we will not treat the examples of necessary and extraordinary services provided in section 633.199 as exhaustive. It is possible that administrative tasks could be considered extraordinary services.

*Id.* at 224-25 (footnotes, citations, and internal quotation marks omitted). It is for the district court to determine whether a service is necessary or extraordinary. *Id.* at 226. We review such determinations for an abuse of discretion. *Id.*

**A. Res Judicata/Law of the Case.** On appeal, the objectors argue the application for attorney fees was erroneously granted because Shuttleworth was not the attorney for the estate and, in fact, the probate court had denied the

request that Shuttleworth be appointed as attorney for the estate. They rely upon the following language from the court's February 13, 2012 order: "At hearing on the Claim in Probate, the estate need not be represented by counsel, as the co-executors have secured their individual counsel and Claimant Gene Uhlenhake has individual counsel." Invoking principles of res judicata and the law of the case, the objectors claim the quoted language affirmatively and conclusively establishes the work performed by Shuttleworth is not compensable. We disagree, concluding the objectors read too much into the language.

It is true the probate court did not appoint Shuttleworth to represent the estate and Shuttleworth was never designated to be the attorney for the estate. But the statutory provisions allowing attorney fees for representing a personal representative do not require that the attorney first be appointed to represent the estate. *See* Iowa Code §§ 633.198, .199, .315; *see also In re Estate of Petersen*, 570 N.W.2d 463, 466 (Iowa Ct. App. 1997).

Here, the probate court acknowledged there was a contested action upcoming—Gene, who was represented by counsel, was claiming Mildred's personal property in the home as his own. The three co-executors were supportive of differing viewpoints on the issue to be determined: Robert as co-executor was represented by an attorney (at the time, David Strand) and had submitted a statement that the personal property at issue was of "little or no value" and did not warrant contested proceedings. Roger and Bonita, however, were of the opinion that Mildred's personal property was not covered by the sales agreement and should be included in the estate and distributed pursuant to Mildred's will. The circumstances allowed the court to conclude the interests of

the estate would be represented. But nothing in the court's February 2012 ruling determined whether *any* of the attorneys would or could be paid by the estate.[3]

**B. Entitlement to Reimbursement.** "The allowance of attorney's fees in estate actions is left to the considerable discretion of the trial court subject to appellate review." *Petersen*, 570 N.W.2d at 465. "An abuse of discretion occurs when the district court exercises its discretion on grounds or for reasons that are clearly untenable, or to an extent clearly unreasonable." *Quad City Bank & Trust v. Jim Kircher & Assocs., P.C.*, 804 N.W.2d 83, 92 (Iowa 2011). "A ground or reason is untenable when it is not supported by substantial evidence or when it is based on an erroneous application of the law." *Id.* (citations and internal quotation marks omitted).

Iowa Code section 633.315 provides:[4]

---

[3] The court's statement—as it is not really a ruling—that the estate "need not be represented" because the co-executors were individually represented says nothing about whether any of the parties' attorneys would or could be compensated by the estate. We agree with Shuttleworth that neither the res-judicata nor the law-of-the-case doctrines preclude the reimbursement of Roger and Bonita's attorney's fees. "The doctrine of res judicata includes both claim preclusion and issue preclusion." *Winnebago Indus., Inc. v. Haverly*, 727 N.W.2d 567, 571 (Iowa 2006). Though not specified, we presume the objectors are raising a claim of issue preclusion. "Under issue preclusion, once a court has decided an issue of fact or law necessary to its judgment, the same issue cannot be relitigated in later proceedings." *Id.* The doctrine applies if:

> "(1) the issue determined in the prior action is identical to the present issue; (2) the issue was raised and litigated in the prior action; (3) the issue was material and relevant to the disposition in the prior action; and (4) the determination made of the issue in the prior action was necessary and essential to that resulting judgment."

*Id.* at 572 (citation omitted). The statement/ruling was not "necessary and essential to" any resulting judgment.

As for the "law of the case," "[i]t is a familiar legal principle that an *appellate* decision becomes the law of the case and is controlling on both the trial court and on any further appeals in the same case." *United Fire & Cas. Co. v. Iowa Dist. Ct for Sioux Cnty.*, 612 N.W.2d 101, 103 (Iowa 2000) (emphasis added). The principle has no application here. *See Bahl v. City of* Asbury, 725 N.W.2d 317, 321 (Iowa 2006) (noting the doctrine applies only to those questions that were properly before the appellate court for consideration and passed on in an earlier appeal).

> When any person is designated as executor in a will, or has been appointed as executor and defends or prosecutes any proceedings in good faith and with just cause, whether successful or not, *that person shall be allowed out of the estate necessary expenses and disbursements*, *including reasonable attorney fees* in such proceeding.

(Emphasis added.)

We have held, "[I]t is a better practice to obtain court authorization for attorney's fees prior to engaging the defense of a will contest. Prior authorization is, however, neither required nor is it dispositive of the question of just cause supporting an award of attorney's fees and costs." *Petersen*, 570 N.W.2d at 466. Rather, executors seeking reimbursement have the "burden of proving he or she acted in good faith and with just cause in engaging in the proceedings." *In re Estate of Wulf*, 526 N.W.2d 154, 156 (Iowa 1994). "In order for just cause to exist, the executor must demonstrate a special estate interest in the contest. No just cause or substantial estate interest exists where a will contest is 'narrowed down to one of personal interest only between proponents and contestants.'" *Id.* "In general, it may be said that an action benefits an estate if it involves increasing or preserving the size of the estate." *Id.* at 157. "An action may also benefit an estate if it determines or represents the decedent's desires and intentions as expressed in the will." *Id.*

---

[4] *See also* Iowa Code §§ 633.198 ("There shall be allowed and taxed as part of the costs of administration of estates as an attorney fee for the personal representative's attorney, such reasonable fee as may be determined by the court, for services rendered, but not in excess of the schedule of fees herein provided for personal representatives."); .199 ("Such further allowances as are just and reasonable may be made by the court to personal representatives and their attorneys for actual necessary and extraordinary expenses and services. . . .").

The objectors argue Roger and Bonita did not meet their burden, asserting the litigation here was a matter of personal interest only.[5] But the probate court found the fees were incurred on behalf of the estate. "We give a district court great deference when ruling on whether services benefit an estate." *Bockwoldt*, 814 N.W.2d at 229.

Roger and Bonita asserted that the attorney fees incurred "to properly and adequately address the contested issues" and "resolution of each of these contested claims and issues in favor of the Applicants' position benefited the Estate by advancing the administration of the Estate and preserving the size of the estate." Gene claimed the right to purchase the house "and property" at Mildred's death entitled him to all Mildred's personal property in the house. However, Mildred's will stated:

> I give all my automobiles, personal effects, household furniture and all other tangible personal property similar in nature, owned by me at my death, to my children if they survive me. My children can make distribution among themselves keeping in mind their needs and sentimental regard for individual items. If my children do not agree on the distribution of such property among themselves, then my executor shall distribute the property equitably among my children.

We observe that the judge (Judge Stochl) who authorized the payment of attorney's fees presided at the evidentiary hearing on Gene's claim. The court's statements at that hearing expressed incredulity for Gene's position that he was

---

[5] We have previously held, "We will not grant attorney's fees and expenses at the estate's expense where the litigation narrows down to a contest of personal interests between will proponents and contestants, because just cause for incurring these expenses does not exist under such circumstances". *Petersen*, 570 N.W.2d at 466. The objectors argue "[t]he hostility of Roger and Bonita towards other beneficiaries is clear from the pleadings." This statement is not supported by the record.

In any event, the pertinent question is whether the personal representatives defended or prosecuted these estate proceedings in good faith and with just cause. *See* Iowa Code § 633.315.

entitled to all the personal property in the house. The court ruled, "I do not find that 'and property' includes personal property. Period. It does not. There is no intention and no indication of that whatsoever." A written ruling followed. Gene did not appeal that ruling.

We conclude the district court did not abuse its discretion in determining Roger and Bonita were entitled to reimbursement for attorney's fees they incurred that benefited the estate. *See id.* However, in light of our ruling on the next claim, we make no ruling as to the reasonableness of the fees requested.

**C. Due Process.** The objectors argue on appeal that because Gene sought a hearing in his resistance to the request for reimbursement and no hearing was held, they were denied due process.

"Due process has two fundamental requirements: notice and opportunity to be heard." *In re Estate of Adams*, 599 N.W.2d 707, 710 (Iowa 1999). "A guiding principle of procedural due process mandates notice and opportunity for *hearing appropriate to the nature of the case*." *Id.* (citing *In re Estate of Lemke*, 216 N.W.2d 186, 189 (Iowa 1974)) (emphasis added).

The objectors received notice of Roger and Bonita's application for reimbursement and were given the opportunity to resist. They filed written resistances, raising various objections. Gene requested a hearing; Robert and Kristine did not. By ruling on the objections, the district court determined no hearing was required.

Iowa Code section 633.198 provides,

> There shall be allowed and taxed as part of the costs of administration of estates as an attorney fee for the personal representative's attorney, such reasonable fee as may be

determined by the court, for services rendered, but not in excess of the schedule of fees herein provided for personal representatives.

Section 633.199 provides:

Such further allowances as are just and reasonable may be made by the court to personal representatives and their attorneys for actual necessary and extraordinary expenses and services. Necessary and extraordinary services shall be construed to include but not be limited to services in connection with real estate, tax issues, disputed matters, nonprobate assets, reopening the estate, location of unknown and lost heirs and beneficiaries, and management and disposition of unusual assets. Relevant factors to be considered in determining the value of such services shall include but not be limited to the following:
1. Time necessarily spent by the personal representatives and their attorneys.
2. Nature of the matters or issues and the extent of the services provided.
3. Complexity of the issues and the importance of the issues to the estate.
4. Responsibilities assumed.
5. Resolution.
6. Experience and expertise of the personal representatives and their attorneys.

Nothing in these provisions requires a hearing be held.

However, chapter 7 of our court rules sets out the rules of probate procedure. Iowa Court Rule 7.2 provides, in part:

**7.2(1)** Every report or application requesting an allowance of fees for personal representatives or their attorneys shall be written and verified as provided in Iowa Code section 633.35.
**7.2(2)** *When fees for ordinary services are sought* pursuant to Iowa Code sections 633.197 and 633.198, proof of the nature and extent of responsibilities assumed and services rendered shall be required. *Unless special circumstances should be called to the court's attention, the contents of the court probate file may be relied upon as such proof.* In determining the value of gross assets of the estate for purposes of Iowa Code section 633.197, the court shall not include the value of joint tenancy property excluded from the taxable estate pursuant to Iowa Code section 450.3(5) or the value of life insurance payable to a designated beneficiary.
**7.2(3)** *When an allowance for extraordinary expenses or services is sought* pursuant to Iowa Code section 633.199, the

request shall include a written statement showing the necessity for such expenses or services, the responsibilities assumed, and the amount of extra time or expense involved. In appropriate cases, the statement shall also explain the importance of the matter to the estate and describe the results obtained. The request may be made in the final report or by separate application. *It shall be set for hearing upon reasonable notice, specifying the amounts claimed, unless waivers of notice identifying the amounts claimed are filed by all interested persons.* The applicant shall have the burden of proving such allowance should be made.

(Emphasis added.)

The application filed by Roger and Bonita included an allowance for ordinary and extraordinary expenses. The application was a written, verified statement asserting the necessity for such expenses or services and was supported by itemized billing statements, which described the services provided and delineated the services as ordinary or extraordinary. We note, however, that rule 7.2(3) states a request for extraordinary expenses "shall be set for hearing."

Roger and Bonita argue the objectors waived their current arguments related to the reasonableness of the reimbursement award, the district court's failure to delineate between ordinary and extraordinary services in its order, and the due process challenge. They assert the objectors' resistances did not challenge either the reasonableness of or the delineation as ordinary and extraordinary expenses of the attorney's fees for which Roger and Bonita were seeking reimbursement. Citing *In re Estate of Frye*, No. 10-0778, 2011 WL 238424, at *3 (Iowa Ct. App. Jan. 20, 2011), they also contend that in failing to file a motion pursuant to Iowa Rule of Civil Procedure 1.904(2), the objectors waived the lack of hearing issue.

We agree that with respect to Kristine and Robert, the challenges made now were not asserted below. "It is a fundamental doctrine of appellate review that issues must ordinarily be both raised and decided by the district court before we will decide them on appeal." *Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). However, Gene did deny numerous paragraphs of the application and *did request a hearing*.[6] In ruling on the application for attorney fees, the district court impliedly denied the request for a hearing. *Cf. Lamasters v. State*, 821 N.W.2d 856, 864 (Iowa 2012) ("If the court's ruling indicates the court *considered* the issue and necessarily ruled on it, even if the court's reasoning is 'incomplete or sparse,' the issues is preserved.").

"When a district court awards attorney fees without specifically addressing complaints raised by one of the parties, and the basis for the court's decision is not clearly evident from the court's ruling, we have found it appropriate to remand the case to the district court to review the application and make specific findings."

---

[6] *Frye* is not apposite. There, the appellants had moved in probate court to have the executor of the estate dismissed. *See* Frye, 2011 WL 238424, at *1. The executor resisted and filed a motion to allow a cross-motion for summary judgment. *Id.* at *2. A hearing was held on the original summary judgment motion at which the executor argued its motion to allow the cross-motion for summary judgment. *Id.* The district court denied the petitioners' motion, but granted the executor's cross-motion for summary judgment, stating findings. *Id.* at *3. On appeal, the petitioners contended in part that the district court erred in granting the cross-motion for summary judgment without a hearing. *Id.* This court ruled the petitioners had failed to preserve the issue because they had not sought a hearing in the district court. Here, Gene *did* request a hearing.

The reference to rule 1.904(2) in *Frye* was not in connection with the hearing issue. Rather, the petitioners also argued on appeal that the probate court's summary judgment ruling was deficient because it made no fact findings. *Id.* This court noted that they had "made no motion for an enlargement of the court's findings" and thus error was not preserved. *See* Iowa R. Civ. P. 1.904(2) ("On motion joined with or filed within the time allowed for a motion for new trial, *the findings and conclusions* may be enlarged or amended and the judgment or decree modified accordingly . . . or decree substituted."). The failure to provide a hearing here where one has been requested involves no findings or conclusions to which a rule 1.904(2) motion could be directed.

*Bockwoldt*, 814 N.W.2d at 232. We do so here.[7] The objections to the fee request did not satisfy the hearing requirement of rule 7.2.

## IV. Conclusion.

We reject the contention that the issue of attorney fees was res judicata as nothing in the district court's February 2012 ruling determined whether any of the attorneys would or could be paid by the estate. We agree with the probate court's finding that Roger and Bonita are entitled to reimbursement for reasonable attorney fees incurred on behalf of the estate. But because the objectors asked for and were entitled to a hearing on the application, we reverse the court's attorney fee award and remand for a hearing on the application.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

---

[7] We observe that the district court, in its discretion, may find that defending a fee application may be compensable as extraordinary services based on the individual facts of each case. *Bockwoldt*, 814 N.W.2d 225-26.